## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **PORTUS SINGAPORE PTE LTD**<br>**& PORTUS PTY LTD,**<br>       **Plaintiff,**<br><br>v.<br><br>**LEVITON MANUFACTURING CO., INC.,**<br>    **Defendant** | **Civil Action No. 1:26-cv-03370**<br><br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFFS' ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

PORTUS SINGAPORE PTE LTD & PORTUS PTY LTD (collectively "Plaintiff" or "Portus") file this Original Complaint and demand for jury trial seeking relief for infringement of the claims of U.S. Patent No. 8,914,526 (the "'526 patent") and U.S. Patent No. 9,961,097 (the "'097 patent") (collectively, the "Patents-in-Suit") by Defendant Leviton Manufacturing Co., Inc. ("Leviton" or "Defendant") during the enforceable terms of the Patents-in-Suit and within the applicable damages period.

## I. THE PARTIES

1. Plaintiff PORTUS SINGAPORE PTE LTD is a Singapore company with its principal place of business located at 6 Shenton Way, #41-01 OUE Downtown, Singapore 068809.

2. Plaintiff PORTUS PTY LTD is an Australian company with its principal place of business at C/-JGS Property Level 15, 60 Margaret Street, Sydney NSW 2000, Australia.

3. On information and belief, Defendant Leviton Manufacturing Co., Inc. is a corporation organized and existing under the laws of the State of Delaware. Defendant maintains a regular and established place of business in the Eastern District of New York, including at least 201 North Service Road, Melville, New York 11747. On information and belief, this Melville

location includes Leviton executive, corporate, sales, support, engineering, product, cloud-services, smart-home, lighting-control, energy-management, automation, connected-device, gateway, and/or commercial operations for Leviton products and services in New York. On information and belief, Defendant sells and offers to sell products and services throughout New York, including in this judicial district, and introduces products and services that perform infringing methods or processes into the stream of commerce knowing that they would be sold in New York and this judicial district. Defendant can be served at Defendant's Melville place of business in this District, at any registered agent authorized to accept service, Corporation Service Company, 80 State Street, Melville, New York 11747, or anywhere Defendant may be found.

4. On information and belief, Defendant directly and/or indirectly develops, designs, manufactures, distributes, markets, offers to sell, sells, operates, provides, maintains, and/or supports infringing products, applications, cloud services, account systems, smart-home automation systems, lighting-control systems, energy-management systems, Lumina Gateway systems, Lumina RF systems, Leviton Cloud Services, My Leviton applications, Decora Smart devices, switches, dimmers, plug-in modules, thermostats, sensors, in-wall touchscreens, load-control modules, window-covering controls, remote-monitoring systems, and related services in the United States, including in this District, and otherwise has directed infringing activities to this District in connection with its products and services.

## II. JURISDICTION AND VENUE

5. This civil action arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285 based on Defendant's unauthorized commercial making, using, selling, offering for sale, importing, operating, providing, and supporting of the Accused Instrumentalities in the United States during

2

the enforceable terms of the Patents-in-Suit. This Court has subject matter jurisdiction under, inter alia, 28 U.S.C. §§ 1331 and 1338(a).

6. This United States District Court for the Eastern District of New York has general and specific personal jurisdiction over Defendant because, directly and through intermediaries, Defendant has committed acts within the District giving rise to this action and is present in, transacts business in, and conducts business with residents of this District and the State of New York.

7. Plaintiff's causes of action arise, at least in part, from Defendant's contacts with and activities in this District and the State of New York.

8. Defendant has committed acts of infringement within this District and the State of New York by making, using, selling, offering for sale, importing, distributing, providing, operating, and/or supporting the Accused Instrumentalities, including without limitation Leviton Lumina Gateway Wireless Energy Management Eco-Systems, Lumina Gateways, Lumina RF products, My Leviton mobile applications, Leviton Cloud Services, Leviton cloud/account and authentication services, device-registration systems, remote-access servers and web servers, Decora Smart Wi-Fi devices, smart switches, dimmers, plug-ins, thermostats, sensors, motion and occupancy detectors, in-wall touchscreens, lighting controls, heavy-duty load controls, window-treatment controls, automation schedules, scenes, and related hardware, software, and network infrastructure configured to remotely monitor and/or control devices located in user premises networks.

9. This Court has personal jurisdiction over Defendant because Defendant has minimum contacts with this forum as a result of business regularly conducted within the State of New York and within this District, and, on information and belief, specifically as a result of, at least,

3

committing acts of patent infringement within New York and this District. Defendant provides products and services accused of infringement to residents of this District that Defendant knew and intended would be used within this District, solicits business from residents of this District, and derives substantial revenue from goods and services provided to residents of this District and New York.

10. This Court also has personal jurisdiction over Defendant because, in addition to Defendant's regular and established place of business in Melville, New York, Defendant has made the Accused Instrumentalities available within this judicial District and has advertised to and solicited residents within the District.

11. The amount in controversy exceeds $75,000 exclusive of interest and costs.

12. Venue is proper in this Court under 28 U.S.C. § 1400(b). Defendant is incorporated under the laws of Delaware and therefore does not reside in New York for purposes of § 1400(b), but, on information and belief, Defendant has committed acts of infringement in this District and has a regular and established place of business in this District, including at least 201 North Service Road, Melville, New York 11747. Defendant also advertises, markets, sells, offers to sell, distributes, provides, and supports the Accused Instrumentalities in this District.

## III. THE PATENTS-IN-SUIT

13. On December 16, 2014, the '526 patent, entitled "LOCAL AND REMOTE MONITORING USING A STANDARD WEB BROWSER," was duly and legally issued by the United States Patent and Trademark Office. The face of the '526 patent identifies a PCT filing date of December 17, 1999 and a patent term adjustment of 173 days. Accordingly, absent any earlier terminal disclaimer, lapse, or other enforceability limitation, the '526 patent expired no later than June 7, 2020. Plaintiff does not seek injunctive relief or damages for any alleged

infringement occurring after expiration of the '526 patent. A true and correct copy of the '526 patent is attached hereto as Exhibit A.

14. On May 1, 2018, the '097 patent, entitled "SYSTEM FOR REMOTE ACCESS OF A USER PREMISES," was duly and legally issued by the United States Patent and Trademark Office. The face of the '097 patent identifies U.S. Patent Application No. 14/536,784, filed November 10, 2014, as a continuation of U.S. Patent Application No. 09/868,417, filed as PCT/AU99/01128 on December 17, 1999, and further states that the '097 patent is subject to a terminal disclaimer. Plaintiff asserts the '097 patent only for alleged infringement during its enforceable term and within the applicable damages period, and does not seek injunctive relief or damages for any alleged infringement occurring after expiration of the '097 patent. A true and correct copy of the '097 patent is attached hereto as Exhibit C.

15. Portus owns the entire right, title, and interest in and to the Patents-in-Suit by assignment, including the right to bring this suit and recover damages for past infringement occurring during the enforceable terms of the Patents-in-Suit, subject to the applicable limitations period under 35 U.S.C. § 286 and any other applicable damages limitations. Defendant was not licensed to the Patents-in-Suit, either expressly or implicitly, and did not enjoy or benefit from any rights in or to the Patents-in-Suit during their enforceable terms.

16. The Patents-in-Suit are presumed valid under 35 U.S.C. § 282 and claim patent-eligible subject matter.

## IV. TECHNOLOGY OF THE PATENTS-IN-SUIT

17. The Patents-in-Suit are directed to specific technological solutions for local and remote monitoring and control of user-premises systems through standard browser-access and external network architectures. The patents explain that users of advanced automation, security,

smart-home, lighting-control, energy-management, thermostat-control, sensor-control, switch-control, dimmer-control, load-control, access-control, and home-control systems commonly need both local and remote access, but conventional systems relied on cumbersome telephone-code or voice-command interfaces and did not provide a geographically independent standard interface that was universally accessible and not platform or hardware dependent. Ex. A, 1:10-56; Ex. C, 1:16-2:42.

18. The specifications identify concrete network-access problems in then-existing systems. Remote monitoring and control systems either assumed that the site to be controlled was already actively connected to the Internet, required technically burdensome manual connection steps, or required direct telephone access that could be expensive and impractical for geographically remote users. Ex. A, 1:50-2:8; Ex. C, 2:40-64. The patents further identify surveillance, alarm-data, access-control, premises-control, and remote interrogation problems, including that data could remain unprotected at the premises and that conventional systems did not provide practical remote monitoring through a standard, location-independent interface. Ex. A, 2:9-31; Ex. C, 2:15-42.

19. The claimed inventions are not the abstract idea of remote monitoring, lighting control, switch control, dimmer control, thermostat control, energy management, home automation, security control, access control, or presenting information. They recite particular arrangements of hardware processing circuitry, external first networks, user-premises networks, access browser modules, communications servers, connection gateways, authentication or authorization data, URL-based access, creation of network communications sessions, web-server/browser interactions, and serving of information from user-premises devices. *See, e.g.*, Ex. A, claim 57; Ex. C, claim 1.

20. The specifications describe concrete architectures that improve computer-network functionality. A browser accesses an extranet located outside the home environment; a communications server in that extranet interconnects on demand with a selected connection gateway in a predetermined home environment; and the selected gateway controls and/or monitors devices in the home environment. Ex. A, Abstract; 2:34-3:4; Ex. C, Abstract; 2:44-3:8. The external network may be implemented as a virtual private network across an Internet substrate, and when a customer connects to the home, the home effectively appears as a website with devices accessible for monitoring or control. *Id.*

21. The claimed arrangements provide technical benefits and non-conventional features, including separating the external network and communications server from user-premises networks, using authorization or authentication data to identify the particular premises network and gateway the user may access, establishing temporary communications sessions on demand, using web-server/browser interactions to provide seamless remote access, and allowing monitoring/control of devices without requiring the user to manually establish a direct technical connection to the premises network. Ex. A, claim 57; Ex. C, claim 1.

22. The patents further disclose concrete structures and operations, including a provider extranet, distributed storage, distributed databases, communications servers, service nodes, Internet access devices, telecommunications networks, premises gateways, premises network terminals, appliances, sensors, control terminals, user-premises network protocol stacks, HTTP server functionality, TCP/IP protocol stacks, device drivers, and physical interfaces. Ex. A, Figs. 1-6; Ex. C, Figs. 1-6.

23. The Patents-in-Suit therefore claim specific improvements to computer-network access and remote user-premises monitoring/control technology, not merely an instruction to

7

apply a generic business practice on a computer. The claims are directed to particular network architectures and ordered combinations that solve problems rooted in computer networking, remote access, authentication, and gateway-mediated user-premises device control.

## V. ACCUSED INSTRUMENTALITIES

24. The terms "Accused Instrumentalities" and "Accused Products" refer to, by way of example and without limitation, Defendant's Leviton Lumina Gateway Wireless Energy Management Eco-Systems, Lumina Gateways, Lumina RF products, My Leviton mobile applications, Leviton Cloud Services, Leviton cloud/account and authorization systems, authentication systems, device-registration systems, remote-access servers and web servers, Decora Smart Wi-Fi products, smart switches, dimmers, plug-in modules, thermostats, temperature and humidity sensors, motion and occupancy sensors, in-wall touchscreens, load-control modules, lighting-control systems, energy-management systems, smart-home systems, window-treatment controls, automation schedules, scenes, rooms, mobile dashboards, web dashboards, third-party integrations, and all other substantially similar systems, components, applications, services, and instrumentalities used to remotely monitor and/or control devices located in user premises networks during the enforceable terms of the Patents-in-Suit. Plaintiff's infringement allegations are directed to accused making, using, selling, offering for sale, importing, operating, providing, and/or supporting of those Accused Instrumentalities during the enforceable terms of the Patents-in-Suit and within the applicable damages period.

25. The Accused Instrumentalities include at least one accused instrumentality group: Leviton Lumina Gateway, Lumina RF, Leviton Cloud Services, My Leviton, Decora Smart, and related remote-access systems, including Lumina Gateway hubs, Lumina RF devices, Leviton cloud/account, authentication, authorization, notification, device-registration, remote-access, and

support services, and connected lighting, dimmer, switch, thermostat, sensor, load-control, window-treatment, touchscreen, smart-home, and energy-management devices. Exhibit B supports Plaintiff's allegations that the Accused Instrumentalities infringe at least claim 57 of the '526 patent. Exhibit D supports Plaintiff's allegations that the Accused Instrumentalities infringe at least claim 1 of the '097 patent.

**A. Leviton Lumina Gateway, Leviton Cloud Services, My Leviton, and Decora Smart Remote-Access Systems - '526 Patent**

26. Leviton provides and supports Lumina Gateway Wireless Energy Management Eco-Systems, Lumina Gateways, Lumina RF products, My Leviton applications, Leviton Cloud Services, Decora Smart devices, lighting controls, switches, dimmers, plug-in modules, thermostats, sensors, in-wall touchscreens, heavy-duty load controls, window-treatment controls, web dashboards, mobile dashboards, and related Leviton cloud remote-access systems deployed at user premises and connected to Leviton cloud and My Leviton services for remote monitoring and/or control. Exhibit B identifies the accused system as including Lumina Gateway hubs, devices such as lighting, thermostats, sensors, and in-wall touchscreens deployed within a home or user premises and connected to the My Leviton app and Leviton cloud services for remote access and remote monitoring/control of user-premises devices. Ex. B at 1-8.

27. For purposes of Plaintiff's infringement allegations under the '526 patent, Exhibit B identifies the first network as Leviton cloud services located external to the user premises; the first arrangement of processing circuitry as Leviton cloud processing circuitry programmed to manage accounts, add devices, synchronize device states, provide cloud programming, create schedules, and provide remote access; the user access browser device as smartphones, tablets, computers, dashboards, and/or related user interfaces running or accessing the My Leviton app,

Leviton Cloud Services portal, or related access-browser functionality; and the second arrangements of processing circuitry as Lumina Gateways, Decora Smart devices, lighting controls, switches, dimmers, thermostats, sensors, load controllers, in-wall touchscreens, and related local-premises devices deployed in respective user premises networks. Ex. B at 2-11.

28. The Leviton Lumina Gateway, Leviton Cloud Services, My Leviton, and Decora Smart remote-access systems practice the preamble and limitations [57A] and [57B] of claim 57 because they provide a system for remote access of user premises networks located in respective user premises; include a first external network with programmed processing circuitry that controls network access; include a hardware user access browser device; and include plural second arrangements of processing circuitry located in respective user premises networks. Ex. B at 1-11.

29. The Leviton Lumina Gateway, Leviton Cloud Services, My Leviton, and Decora Smart remote-access systems practice limitation [57C] because Leviton Cloud Services, My Leviton backend services, and related Leviton cloud services are adapted by programming to initiate or cause the establishment of network connections with selected Lumina Gateways, Decora Smart devices, lighting controls, switches, dimmers, thermostats, sensors, load controllers, in-wall touchscreens, and other premises devices when an authorized user logs in, registers or adds a device, selects a business location, home, room, scene, schedule, light, switch, dimmer, thermostat, sensor, load, or other device, sends a command, or requests information using the My Leviton application, Leviton Cloud Services web portal, mobile interface, or related interface. Ex. B at 9-13.

30. The Leviton Lumina Gateway, Leviton Cloud Services, My Leviton, and Decora Smart remote-access systems practice limitation [57D] because the My Leviton app, Leviton

Cloud Services interfaces, web dashboards, mobile dashboards, and related remote-access functionality operate as access-browser functionality for locating and examining information on the Leviton first network and on user premises networks through URL/URI-addressed resources, HTTP/HTTPS endpoints, authenticated web services, app screens, locations, rooms, devices, scenes, schedules, and user selections that cause the client to access Leviton cloud resources and corresponding lighting, thermostat, sensor, switch, dimmer, load-control, window-treatment, touchscreen, and device information. Ex. B at 3-6, 10-14.

31. The Leviton Lumina Gateway, Leviton Cloud Services, My Leviton, and Decora Smart remote-access systems practice limitations [57E] and [57F] because the Leviton first circuitry arrangement receives authentication and/or authorization data from the user device, including My Leviton account credentials, Leviton Cloud Services login information, app-login information, device-registration or add-device data, location identifiers, room identifiers, gateway identifiers, device identifiers, scene identifiers, schedule identifiers, authorization tokens, session credentials, role-based authority levels, and/or user permissions, and uses that data to determine which premises network, Lumina Gateway, business location, room, scene, light, dimmer, switch, thermostat, sensor, load, window-treatment, touchscreen, Decora Smart device, or other local networked component the user is authorized to access. Ex. B at 5-6, 11-16.

32. The Leviton Lumina Gateway, Leviton Cloud Services, My Leviton, and Decora Smart remote-access systems practice limitations [57G] and [57H] because Leviton's external first network is configured to create a communications session between the authorized user access device and the selected second arrangement of processing circuitry at the user premises, including the Lumina Gateway, Decora Smart device, lighting control, switch, dimmer, thermostat, sensor, load-control module, in-wall touchscreen, and/or other local network

components, and because the selected local-premises processing circuitry provides selected information concerning the user premises network and connected devices. Ex. B at 9-18.

33. The Leviton Lumina Gateway, Leviton Cloud Services, My Leviton, and Decora Smart remote-access systems practice limitations [57I] and [57J] because Leviton's first circuitry arrangement serves the selected information to the user access browser device and makes available information and controls for connected lighting, dimmer, switch, thermostat, temperature, humidity, motion, occupancy, load, window-treatment, touchscreen, schedule, scene, room, alert, and device-status components, including information regarding user-premises network components identified and selected using the My Leviton app, Leviton Cloud Services, web dashboards, mobile dashboards, and/or Lumina Gateway. Ex. B at 10-20.

34. To the extent Leviton contends that the user, installer, dealer, contractor, mobile device, computer, local router, Lumina Gateway, Decora Smart device, lighting control, switch, dimmer, thermostat, sensor, load-control module, in-wall touchscreen, web portal, mobile application, third-party integration, or other premises component performs a step that Leviton itself does not physically perform, the allegations nevertheless support direct infringement by Leviton because Leviton makes, uses, provides, operates, maintains, and controls the accused Leviton cloud and application ecosystem; conditions participation in the accused remote-access system on registration, authentication, account creation, device pairing, installation, setup, configuration, role-based permissions, cloud subscription or account access, app use, and compliance with Leviton-prescribed technical requirements; and establishes the manner and timing by which users, installers, dealers, contractors, gateways, devices, applications, and cloud services interact to perform the claimed remote-access functionality. Leviton's cloud services, applications, documentation, device-registration flows, account systems, firmware, product

12

design, and support infrastructure direct and control the performance of the accused system as a single, integrated Leviton remote-access platform.

**B. Leviton Lumina Gateway, Leviton Cloud Services, My Leviton, and Decora Smart Remote-Access Systems - '097 Patent**

35. Leviton's accused Lumina Gateway, Leviton Cloud Services, My Leviton, Decora Smart, and related remote-access systems also infringe at least claim 1 of the '097 patent. Exhibit D identifies the accused system as including Lumina Gateway Wireless Energy Management Eco-Systems, Lumina Gateway hubs, devices such as lighting, thermostats, sensors, and in-wall touchscreens deployed within a home or user premises, and My Leviton app and Leviton cloud services for remote monitoring/control of user-premises networks. Ex. D at 1-9.

36. For purposes of Plaintiff's infringement allegations under the '097 patent, Exhibit D identifies the first hardware processing circuitry running an access browser module as a user smartphone, tablet, computer, web browser, My Leviton app device, and/or Leviton Cloud Services web client; the second hardware processing circuitry located in a first network as Leviton cloud services processing circuitry located outside the user premises; and the connection gateway located in the local network of the user premises as a Lumina Gateway hub and/or related Leviton gateway functionality that is communicatively coupled to local network components such as lighting controls, switches, dimmers, thermostats, sensors, load controls, window-treatment controls, in-wall touchscreens, Decora Smart devices, and other premises devices. Ex. D at 1-12.

37. The Leviton Lumina Gateway, Leviton Cloud Services, My Leviton, and Decora Smart remote-access systems practice limitation [1A] because a user's phone, tablet, computer, web browser, My Leviton app device, or Leviton Cloud Services client runs an access browser

module and because Leviton cloud services include server-side processing circuitry located in a first external network. The systems practice limitation [1B] because the Lumina Gateway and/or related Leviton gateway functionality is located in, and forms part of, a local network of the user premises and bridges Leviton cloud services to local devices, including lighting controls, thermostats, sensors, switches, dimmers, and other local network components. Ex. D at 1-10.

38. The Leviton Lumina Gateway, Leviton Cloud Services, My Leviton, and Decora Smart remote-access systems practice limitations [1C], [1D], and [1E] because Leviton cloud services are external to the user premises, accessible via the access browser module, and configured to communicate on demand with the connection gateway; because the connection gateway is integrated with or communicatively coupled to networked components of the local network of the user premises, including lights, switches, dimmers, thermostats, temperature and humidity sensors, motion and occupancy sensors, load controls, window-treatment controls, in-wall touchscreens, and Decora Smart devices; and because user interaction with URL/URI-addressed cloud resources, app screens, dashboards, locations, rooms, scenes, schedules, and device selections begins a sequence in which Leviton cloud services responsively serve information regarding local networked components obtained through the gateway without a direct communicative coupling between the Leviton cloud processing circuitry and each local component. Ex. D at 7-16.

39. The Leviton Lumina Gateway, Leviton Cloud Services, My Leviton, and Decora Smart remote-access systems practice limitations [1F], [1G], [1H], and [1I] because the first network is configured to receive authentication data from the user device, determine from that authentication data which local network, business location, home, gateway, room, scene, schedule, or device the user is authorized to access, and establish communication with the

14

selected Lumina Gateway, lighting control, switch, dimmer, thermostat, sensor, load-control module, in-wall touchscreen, Decora Smart device, or other local networked component upon verification of the authentication data. Ex. D at 5-6, 13-21.

40. The Leviton Lumina Gateway, Leviton Cloud Services, My Leviton, and Decora Smart remote-access systems practice limitations [1J] and [1K] because Leviton cloud services provide previously stored selected information regarding local networked components of the user premises, including device state, lighting status, dimmer level, switch status, thermostat information, temperature, humidity, motion/occupancy sensor data, load status, location data, room data, schedules, scenes, automation rules, notifications, alerts, maps, dashboards, and other selected information, and because that information is served to the authenticated user through the same My Leviton, Leviton Cloud Services, web dashboard, or mobile access-browser interface used to access the local networked components. Ex. D at 10-25.

41. To the extent Leviton contends that the user, installer, dealer, contractor, mobile device, computer, local router, Lumina Gateway, Decora Smart device, lighting control, switch, dimmer, thermostat, sensor, load-control module, in-wall touchscreen, web portal, mobile application, third-party integration, or other premises component performs a step that Leviton itself does not physically perform, the allegations nevertheless support direct infringement by Leviton because Leviton makes, uses, provides, operates, maintains, and controls the accused Leviton system as an integrated cloud/app/premises-gateway platform; conditions use of the accused remote-access functionality on Leviton account creation, authentication, device registration, gateway setup, installation, configuration, cloud communication, remote access, role-based permissions, app use, and compliance with Leviton-prescribed technical requirements; and receives the benefit of the system's operation through product sales, cloud-

service adoption, account creation, user retention, device ecosystem growth, and customer support. Leviton's own cloud services, account systems, applications, firmware, product design, web services, instructions, and support infrastructure direct and control the manner and timing of the alleged performance by users, installers, devices, gateways, and cloud components, thereby blunting any divided-infringement argument and supporting infringement by Leviton as a single actor or, alternatively, under direction-or-control and joint-enterprise principles.

## VI. COUNT I - INFRINGEMENT OF U.S. PATENT NO. 8,914,526

42. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

43. Defendant directly infringed, literally and/or under the doctrine of equivalents, at least claim 57 of the '526 patent by making, using, selling, offering to sell, importing, providing, operating, and/or supporting the Accused Instrumentalities in the United States, including Leviton Lumina Gateway Wireless Energy Management Eco-Systems, Lumina Gateways, Lumina RF devices, Leviton Cloud Services, My Leviton applications, Decora Smart devices, switches, dimmers, lighting controls, thermostats, sensors, in-wall touchscreens, load-control products, window-treatment controls, and related products and services configured to practice the claimed system for remote access of user premises networks.

44. Defendant's infringement of the '526 patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement during the enforceable term of the '526 patent, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court under 35 U.S.C. § 284, subject to all applicable damages limitations, including 35 U.S.C. § 286 and any marking or notice limitations.

45. Plaintiff does not seek injunctive relief or damages for infringement occurring after

expiration of the '526 patent.

## VII. COUNT II - INFRINGEMENT OF U.S. PATENT NO. 9,961,097

46. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

47. Defendant directly infringed, literally and/or under the doctrine of equivalents, at least claim 1 of the '097 patent by making, using, selling, offering to sell, importing, providing, operating, and/or supporting the Accused Instrumentalities in the United States, including Leviton Lumina Gateway Wireless Energy Management Eco-Systems, Lumina Gateways, Lumina RF devices, Leviton Cloud Services, My Leviton applications, Decora Smart devices, switches, dimmers, lighting controls, thermostats, sensors, in-wall touchscreens, load-control products, window-treatment controls, and related products and services configured to practice the claimed system for remote access of a user premises.

48. Defendant's infringement of the '097 patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement during the enforceable term of the '097 patent, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court under 35 U.S.C. § 284, subject to all applicable damages limitations, including 35 U.S.C. § 286 and any marking or notice limitations.

49. Plaintiff does not seek injunctive relief or damages for infringement occurring after expiration of the '097 patent.

## VIII. CONDITIONS PRECEDENT

50. Plaintiff has never sold a product. Upon information and belief, no Plaintiff predecessor-in-interest has ever sold a product. Neither Plaintiff nor any licensee made or sold a patented article. Plaintiff is a non-practicing entity, with no products to mark. Plaintiff has pled

17

all statutory requirements to obtain pre-suit damages. Further, all conditions precedent to recovery are met. Under the rule of reason analysis, Plaintiff has taken reasonable steps to ensure marking by any licensee producing a patented article.

51. Plaintiff and its predecessors-in-interest have entered into settlement licenses with several defendant entities, but none of the settlement licenses were to produce a patented article, for or under Plaintiff's patents. Duties of confidentiality prevent disclosure of settlement licenses and their terms in this pleading, but discovery will show that Plaintiff and its predecessors-in-interest have substantially complied with 35 U.S.C. § 287(a). Furthermore, each of the defendant entities in the settlement licenses did not agree that it was infringing any of Plaintiff's patents, including the Patents-in-Suit, and thus was not entering into the settlement license to produce a patented article for Plaintiff or under its patents. Further, to the extent necessary, Plaintiff will limit its claims of infringement to method or system-use damages for which no marking requirement applies, and/or will show that any marking obligation was satisfied or inapplicable.

52. To the extent Defendant identifies an alleged unmarked product produced for Plaintiff or under Plaintiff's patents, Plaintiff will develop evidence in discovery to show that the alleged unmarked product does not practice the Patents-in-Suit and/or that Plaintiff has substantially complied with the marking statute. Defendant has not identified any alleged patented article for which § 287(a) would apply. Further, Defendant has not alleged any defendant entity produced a patented article under authority from Plaintiff.

53. The policy of § 287 serves three related purposes: (1) helping to avoid innocent infringement; (2) encouraging patentees to give public notice that an article is patented; and (3) aiding the public to identify whether an article is patented. These policy considerations are advanced when parties are allowed to freely settle cases without admitting infringement and thus

do not require marking. All settlement licenses were to end litigation and thus the policies of § 287 are not violated. Such a result is further warranted by 35 U.S.C. § 286, which allows for recovery of damages for six years prior to the filing of the complaint, subject to the expiration and other limitations stated herein.

54. For each previous settlement license, Plaintiff understood that (1) the settlement license was the end of litigation between the defendant entity and Plaintiff and was not a license where the defendant entity was looking to sell a product under any of Plaintiff's patents; (2) the settlement license was entered into to terminate litigation and prevent future litigation between Plaintiff and the defendant entity for patent infringement; (3) the defendant entity did not believe it produced any product that could be considered a patented article under 35 U.S.C. § 287; and (4) Plaintiff believes it has taken reasonable steps to ensure compliance with 35 U.S.C. § 287 for each prior settlement license.

55. Each settlement license that was entered into between a defendant entity and Plaintiff was negotiated in the face of continued litigation and, while Plaintiff believed there was infringement, no defendant entity agreed that it was infringing. Thus, each prior settlement license reflected a desire to end litigation and as such the policies of § 287 are not violated.

56. For any prior settlement, the settling defendant was not licensed to make and sell infringing products in the future, thus the marking statute imposes no obligation on Plaintiff to make an effort to require a prior settling defendant to mark products Plaintiff had accused of infringement. To the extent necessary, Plaintiff will develop evidence in discovery showing that no prior settlement license required or authorized future manufacture or sale of a patented article under the Patents-in-Suit.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendant as follows:

a. Enter judgment that Defendant has infringed one or more claims of the Patents-in-Suit during the enforceable terms of the Patents-in-Suit;

b. Award Plaintiff damages adequate to compensate for Defendant's infringement during the enforceable terms of the Patents-in-Suit and within the applicable damages period, but in no event less than a reasonable royalty, together with pre-judgment and post-judgment interest and costs under 35 U.S.C. § 284;

c. Award Plaintiff supplemental damages for any continuing damages period occurring before expiration of the asserted patent rights and before final judgment, to the extent permitted by law;

d. Declare this case exceptional under 35 U.S.C. § 285 and award Plaintiff its reasonable attorneys' fees, expenses, and costs to the extent permitted by law;

e. Award Plaintiff such other and further relief as the Court deems just and proper.

## X. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: June 4, 2026        Respectfully submitted,

*/s/ David J. Hoffman*
David J. Hoffman
6576 Milestrip Road
Orchard Park, New York 14127
(917) 701-3117 (telephone)
djhoffman@djhoffmanlaw.com

***Attorneys for Portus Singapore PTE Ltd &
Portus PTY Ltd***

20